IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| ABDIAS ROSALES,<br><br>   **Plaintiff**,<br><br>v.<br><br>TEXAS CITY OF TYLER, CHIEF OF POLICE J. TOLER, OFFICER J. HERBERT, OFFICER S. BLACK, OFFICER S. MCGREGOR, OFFICER T. SIPES, OFFICER J. UTLEY, OFFICER A. THOMAS,<br><br>   **Defendants.** | § § § § § § § § § § § § § §   CIVIL ACTION NO. 6:23-CV-00245-JDK |

**REPORT AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE**

  Before the court is Defendants' the City of Tyler, Chief Jimmy Toler, Officer J. Hebert, Officer S. Black, Officer S. McGregor, Officer T. Sipes, Officer J. Utely, and Officer A. Thomas (collectively "Defendants") motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 4.) Plaintiff filed a response in opposition (Doc. No. 10). No reply or sur-reply were filed. The motion was referred to the undersigned for a recommendation of disposition. (Doc. No. 15.) For the reasons stated herein, the court **RECOMMENDS** that Defendants' motion to dismiss (Doc. No. 4) be **GRANTED-IN-PART** and **DENIED-IN-PART** as set forth herein.

**BACKGROUND**

  Plaintiff filed this action against Defendants on May 9, 2023, for alleged violations of constitutional rights pursuant to 42 U.S.C. § 1983 and for conspiracy to interfere with civil rights

1

pursuant to 42 U.S.C. § 1985. (Doc. No. 1.) Specifically, Plaintiff alleges that Defendants violated Plaintiff's First, Fourth, and Fourteenth Amendment rights. *Id.*

The claims arise from an incident that occurred on March 18, 2022. *Id.* at ¶ 10. Plaintiff alleges that he was working at Tyler Autoplex when he observed a traffic stop involving a vehicle sold and financed by Tyler Autoplex. *Id.* Plaintiff alleges that his boss, Blas Murillo, approached the traffic stop and was recording it. *Id.* Plaintiff alleges that he remained on the other side of the street until backup arrived. *Id.* at ¶¶ 13–15. When Plaintiff approached the stop, he was concerned about whether the vehicle was going to be taken by the police and asked the responding officers whether, if he had an affidavit of repossession, the vehicle could be released to him. *Id.* at ¶ 17. Plaintiff alleges that Officer McGregor asked him if he had a tow truck to tow the vehicle and that he indicated that he had a flatbed truck to tow the vehicle. *Id.* at ¶ 18. Plaintiff then alleges that he was informed by Officer McGregor that the vehicle was going to be towed because it was used in the commission of an offense. *Id.* at 19. Plaintiff alleges that Officer Herbert threatened his boss with arrest for recording the stop. *Id.*

Plaintiff alleges that when a Muggles tow truck pulled up to the scene he asked if the vehicle was being towed to the Tyler Police Impound and Officer Herbert indicated that Plaintiff was "being an asshole" for asking. *Id.* at ¶ 20. Plaintiff alleges that Officers Herbert and McGregor refused to discuss the issue of whether he would be allowed to repossess the vehicle and that when Plaintiff approached the tow truck driver to inquire, Officers Herbert and McGregor placed Plaintiff under arrest for interfering with a police investigation. *Id.* at ¶ 21.

Plaintiff alleges that on March 25, 2022, Officer Amber Thomas informed Plaintiff that an arrest warrant would be issued on his criminal charges and that on April 13, 2022, Officer Thomas informed him that the judge signed the arrest warrant. *Id.* at ¶ 22. As a result, Plaintiff alleges that

2

he self-surrendered and was booked into Smith County Jail. *Id.* Plaintiff alleges that Officer Thomas made a criminal complaint against Plaintiff for Interference With Public Duties, a Class B Misdemeanor. *Id.* at ¶ 23. Plaintiff alleges that Officer Thomas falsified the warrant affidavit by stating that Plaintiff interfered with Officer Herbert's discharge of his duties. *Id.* Plaintiff states that the affidavit was false because Officer Thomas knew at the time that Plaintiff's actions did not constitute an offense under the laws of the State of Texas and that Defendants Herbert, McGregor, Black, Thomas, and Toler all knew that that Plaintiff did not interfere with Officer Herbert's duties. *Id.*

Plaintiff sues all Defendants in their official and individual capacities for retaliation in violation of the First Amendment, wrongful arrest and malicious prosecution in violation of the Fourth Amendment, and for deprivation of due process under the Fourteenth Amendment. Plaintiff further alleges that as Chief of Police, Officer Toler engaged in wrongful hiring, training, supervising, and maintain quality public servants in violation of these rights. *Id.* at ¶¶ 26–28. Plaintiff further alleges that Defendant Toler is liable for the conduct of officers acting in the scope of their employment and that Chief Toler instituted policies that were the moving force behind the constitutional violations. *Id.* at ¶ 31. Plaintiff makes similar *respondeat superior* claims against the City of Tyler and states that by acting through policy makers the City of Tyler intentionally, knowingly, recklessly, or with deliberate indifference to the rights of its inhabitants failed to prevent the commission of these wrongs. *Id.* at ¶¶ 40–41. Plaintiff further alleges that the City of Tyler approved or ratified the unlawful conduct of Defendants. *Id.* at ¶ 42.

In addition, Plaintiff alleges a claim for conspiracy to interfere with civil rights pursuant to 42 U.S.C. § 1985(3). Plaintiff alleges that all Defendants were aware that Plaintiff's actions did not constitute interference with public duties and that they knew that the citation and prosecution

of the charge was false. *Id.* at ¶ 45. Plaintiff alleges that all Defendants knew that such action was in violation of Plaintiff's constitutional rights. *Id.* at ¶¶ 46–47.

## LEGAL STANDARD

Motions to dismiss under Rule 12(b)(6) for failure to state a claim "are viewed with disfavor and are rarely granted." *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005); *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). The court utilizes a "two-pronged approach" in considering a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). First, the court identifies and excludes legal conclusions that "are not entitled to the assumption of truth." *Id.* Second, the court considers the remaining "well-pleaded factual allegations." *Id.* The court must accept as true all facts alleged in a plaintiff's complaint, and the court views the facts in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). A plaintiff's complaint survives a defendant's Rule 12(b)(6) motion to dismiss if it includes facts sufficient "to raise a right to relief above the speculative level." *Id.* (quotations and citations omitted).

In other words, the court must consider whether a plaintiff has pleaded "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "'[D]etailed factual allegations'" are not required. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Nevertheless, a complaint must allege "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

4

## DISCUSSION

Defendants' motion first requests that the court dismiss Plaintiff's claims for malicious prosecution and wrongful arrest under Rule 12(b)(6) because Defendants claim there is no freestanding claim for malicious prosecution and the impartial intermediary doctrine prohibits a claim for false arrest. (Doc. No. 4, at 5–9.) Plaintiff responds that he has alleged a viable *Franks* claim and that the Supreme Court and the Fifth Circuit permit a claim for malicious prosecution when there is favorable termination of prosecution. (Doc. No. 10, at 3–7.) Defendants further argue that the claims against Defendants Utley, Sipes, and Black should be dismissed for failure to state a claim. (Doc. No. 4, at 9–11.) Defendants argues that Plaintiff's conclusory claims against Chief Toler and the City of Tyler fail to state a claim. *Id.* at 11–13. Plaintiff contends that he has sufficiently stated a claim against all Defendants. (Doc. No. 10, at 9–11.) Finally, Defendants contend that they are entitled to qualified immunity (Doc. No. 4, at 14–16), which Plaintiff disputes (Doc. No. 10, at 10).

As an initial matter, the court notes that the poor presentation of Defendants' motion, coupled with Plaintiff's poorly organized pleadings, has made it difficult to untangle the web of legal issues presented to the court for resolution on a matter of complex constitutional questions and corresponding affirmative defenses. The lack of attention to detail by both parties has resulted in a procedural presentation of issues that is difficult to follow at best. For example, although Defendants request that the entire action be dismissed, Defendants' motion does not address Plaintiff's pleaded First Amendment, Fourteenth Amendment, or § 1985 conspiracy claims. And while Plaintiff's response manages to identify some of these deficiencies, it does not identify all of them. To compound the problem, Defendants failed to file a reply to clarify any of these matters. Furthermore, numerous boilerplate arguments used by both parties fail to properly raise issues

before the court and, as a result, consume an inordinate amount of judicial resources to resolve. Therefore, the court streamlines the issues for resolution as presented in Defendants' motion below.

    **I.**    **Claim for Malicious Prosecution Against Officer Thomas**

Defendants first argue that Plaintiff's claim for malicious prosecution must be dismissed because there are no freestanding claims for malicious prosecution under the constitution. (Doc. No. 4, at 7.) Plaintiff responds that the Supreme Court has held in *Thompson v. Clark*, 142 S.Ct. 1332 (2022) that litigants may bring a Fourth Amendment malicious prosecution claim under § 1983 and that the Fifth Circuit recently recognized such claims in *Armstrong v. Ashley*, 60 F.4th 262, 278 (5th Cir. 2023). (Doc. No. 10, at 6–7.)

As to the matter of malicious prosecution, the court notes that previously the Fifth Circuit foreclosed freestanding claims for violations of constitutional rights by engaging in malicious prosecution. *Castellano v. Fragozo*, 352 F.3d 939, 958 (5th Cir. 2003) (en banc). Recently, however, in light of the Supreme Court's holding in *Thompson*, the Fifth Circuit agreed that litigants may bring a Fourth Amendment malicious prosecution claim under § 1983. *Armstrong*, 60 F.4th at 278. The Fifth Circuit further interpreted *Thompson* to require a showing that the malicious prosecution resulted in the unlawful seizure of the plaintiff and reinstated the elements for a constitutionalized malicious prosecution claim it had previously set forth in *Gordy*. *Id.* These elements include: "(1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) malice; and (6) damages." *Id.* citing (*Gordy v. Burns*, 294 F.3d 722, 727 (5th Cir. 2002)).

Here, as to the requirement that Plaintiff allege an unlawful seizure under the Fourth Amendment resulting from the malicious prosecution, Plaintiff alleges that he was arrested on a falsified arrest warrant affidavit. Specifically, Plaintiff alleges that Officer Thomas falsely stated in an arrest warrant affidavit that Plaintiff interfered with the discharge duties of Officer Herbert. (Doc. No. 1, at ¶ 23.) Plaintiff alleges that this false affidavit led to the issuance of an arrest warrant signed by a judge for which he self-surrendered and was booked in the Smith County Jail. *Id.* at ¶ 22. In *Manuel v. City of Joliet, Ill.*, the Supreme Court made clear that the Fourth Amendment prohibits government officials from detaining a person in the absence of probable cause and that the lack of probable cause can occur when "a judge's probable-cause determination is predicated solely on a police officer's false statements." *Manuel v. City of Joliet, Ill.*, 580 U.S. 357, 367 (2017). Because Plaintiff has alleged that he was arrested without probable cause, he has sufficiently alleged an unlawful seizure under the Fourth Amendment.

As to the remainder of the elements, Plaintiff has pleaded sufficient facts to assert a claim for malicious prosecution. Plaintiff has alleged commencement through his allegations that a warrant for his arrest issued and a criminal complaint was made against him for Interference with Public Duties. (Doc. No. 1, at ¶¶ 22, 23.) Plaintiff has further alleged causation in alleging that Officer Thomas initiated the commencement of the criminal proceedings by signing and executing an arrest warrant that falsely stated that Plaintiff interfered with the discharge duties of Officer Herbert. *Id.* at ¶ 23. Further, Plaintiff alleges that the charges against him were ultimately dismissed, and the jail record reflects that they were resolved favorably on a surety bond. *Id*. Moreover, as discussed above, Plaintiff has plainly alleged that the proceedings lacked probable cause. (Doc. No. 1, at ¶¶ 22–24.) As to malice, it is well established that malice can be inferred from the absence of probable cause. *See Stewart v. Sonneborn*, 98 U.S. 187 (1878); *Young v. City*

*of Idabel*, 721 F. App'x 789, 804 (10th Cir. 2018) (collecting cases). Again, as discussed, Plaintiff has alleged that the proceedings lacked probable cause because they were initiated by an arrest affidavit and warrant that Plaintiff alleges included false statements. Finally, Plaintiff has alleged damages for the malicious prosecution in that he has had to employ a law firm to represent him in this matter to assert his claims against Defendants and he seeks his attorney's fees. (Doc. No. 1, at ¶ 33, 48.) Plaintiff further alleges reputational damage, emotional stress, and mental anguish as a result of the wrongful criminal charges. *Id.* at ¶ 24.

For the reasons discussed herein, Plaintiff has sufficiently alleged a claim for malicious prosecution against Officer Thomas.

II.    **Claim for Wrongful Arrest Against Officer Thomas**

Defendants next argue that Plaintiff fails to state a claim for a constitutional violation based upon an alleged wrongful arrest because under the "independent intermediary doctrine," an officer procuring a warrant will not be liable if the facts supporting the warrant are put before an impartial intermediary such as a magistrate or grand jury. (Doc. No. 4, at 8–9.) Plaintiff alleges that Defendants' blanket assertion of the independent intermediary doctrine should be rejected because Plaintiff has alleged that the officers involved in instigating and executing his criminal charges did so knowing that his conduct did not constitute an offense and therefore knew that no probable cause existed for the arrest. (Doc. No. 10, at 4–6.)

"It is well settled that if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party." *Curtis v. Sowell*, 761 F. App'x 302, 304 (5th Cir. 2019). However, "[d]espite review by an independent intermediary, the initiating party may be liable for false arrest if the plaintiff shows that 'the deliberations of that intermediary were

in some way tainted by the actions of the defendant.'" *Deville v. Marcantel*, 567 F.3d 156, 170 (5th Cir. 2009) (quoting *Hand v. Gary*, 838 F.2d 1420, 1428 (5th Cir. 1988)).

Here, Plaintiff alleges that the actions of the judge issuing the warrant were tainted by Officer Thomas's alleged false statements in the arrest warrant affidavit. (Doc. No. 1, at ¶ 23.) Specifically, Plaintiff alleges that Officer Thomas knew that Plaintiff's actions did not amount to a criminal offense at the time she executed the affidavit, but nonetheless she signed a false statement and submitted it to the judge to issue a warrant for Plaintiff's arrest. *Id.* Plaintiff alleges that this false statement resulted in his actual arrest. *Id.* at ¶ 22. As such, Plaintiff has also sufficiently pleaded a claim for wrongful arrest against Officer Thomas.

### III. Plaintiff's Fourth Amendment Claims as to Remaining Defendants

Defendants next move to dismiss claims against individual defendants, Defendant Officer Utley, Defendant Officer Sipes, Defendant Officer Black, Defendant Chief Toler, and the City of Tyler for failure to state a claim. (Doc. No. 4, at 9–12.) Plaintiff does not address these arguments other than addressing the sufficiency of his failure to train claim against Chief Toler and the City of Tyler. (Doc. No. 10, at 9–10.)

As to the individual officers, Defendant Officer Utley, Defendant Officer Sipes, and Defendant Officer Black, the court agrees that the complaint does not contain allegations sufficient to allege a constitutional violation by these individuals based upon their personal involvement. Moreover, it appears that Plaintiff does not dispute this fact as he has not responded to Defendants' motion in this respect. However, as the court already discussed, Plaintiff has asserted a claim pursuant to 42. U.S.C. § 1985 and Defendants have not moved to dismiss these allegations. The court will therefore not *sua sponte* consider the sufficiency of Plaintiff's conspiracy claim, but presumes that the naming of the above-referenced Defendants in this lawsuit is for purposes of

9

that particular claim rather than pursuing individual claims against these Defendants for violations of § 1983. However, to the extent Plaintiff intended to assert claims against Defendant Officer Utley, Defendant Officer Sipes, and Defendant Officer Black for Fourth Amendment violations, the court agrees that those claims are not sufficiently alleged and should be dismissed.

### a. Failure to Train Claim Against Chief Toler

As to Defendant Chief Toler, Defendants argue that a failure to train claim against Chief Toler should be dismissed because the allegations are conclusory and amount to nothing more than claims based upon *respondeat superior*. (Doc. No. 4, at 11–12.) Plaintiff alleges that his allegations are sufficient, and he should be allowed discovery regarding the officers' training particularly with respect to his First Amendment retaliation claim and the required factual basis of the criminal case. (Doc. No. 10, at 9.) Plaintiff alternatively requests that he be allowed to amend his complaint. *Id.*

To succeed on a failure-to-train theory, "[d]efects in a particular training program must be specifically alleged." *Quinn v. Guerrero*, 863 F.3d 353, 365 (5th Cir. 2017) (citing *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005)). Of course, courts should only require "minimal factual allegations" about the training programs at the pleading stage, since "it is exceedingly rare that a plaintiff will have access to (or personal knowledge of) specific details regarding the existence or absence of internal policies or training procedures prior to discovery." *Thomas v. City of Galveston, Texas,* 800 F. Supp. 2d 826, 842–43 (S.D. Tex. 2011). Still, a plaintiff cannot state a failure-to-train claim by making a "conclusory allegation that it is 'apparent from the facts of [the] case' that [ ] training ... was insufficient." *Speck v. Wiginton*, 606 F. App'x 733, 736 (5th Cir. 2015).

Here, Plaintiff alleges a number of conclusory statements with respect to Chief Toler. He alleges, for example, that Chief Toler is "liable for the conduct of Defendant officers while they are acting within the course and scope of their employment," that Toler "instituted policies which

created and still create a climate in which the type of abusive behavior exhibited" occurred, that Toler is "guilty of wrongful hiring, training, supervising, disciplining and maintaining public servants of the quality and character of Officer Defendants," that Toler is "guilty of promulgating regulations, ordinances and policies that allow Defendants to disregard Plaintiff's constitutional rights," and that Toler is "grossly negligent in entrusting Officer Defendants with responsibility in the prosecution of this case…" (Doc. No. 1, at ¶¶ 27, 28, 31.) Plaintiff's allegations, though stating a number of legal conclusions against Chief Toler, fail to allege any facts regarding a defect in any particular training program or any personal involvement of Chief Toler with respect to a constitutional violation. The doctrine of *respondeat superior* does not apply to § 1983 claims. *Williams v. Luna*, 909 F.2d 121, 123 (5th Cir. 1990). Accordingly, Plaintiff has failed to allege a claim against Chief Toler for failure to train. Although it is unclear whether Plaintiff intended to allege this claim against Chief Toler in his individual capacity, his official capacity, or both, neither claim can stand as alleged for the reasons discussed.

### b. *Monell* Claim Against the City of Tyler

Defendants next move to dismiss the claims against the City of Tyler as conclusory and failing to sufficiently allege municipal liability. (Doc. No. 4, at 12–14.) Plaintiff contends that his allegations that the City failed to train its police officers and prosecutors on the basic tenets of criminal prosecution are sufficient. (Doc. No. 10, at 10.) Plaintiff alternatively asks to amend his pleadings. *Id.*

A local government may be sued under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible." *Monell v. Dep't of Soc. Serv. of New York*, 436 U.S. 658, 694 (1978); *see also Bishop v. Arcuri*, 674 F.3d

456, 467 (5th Cir. 2012) ("[M]unicipal liability under section 1983 requires proof of three elements: (1) a policymaker; (2) an official policy; and (3) violation of constitutional rights whose moving force is the policy or custom.") (internal citations omitted).  To be successful on a claim for violation of § 1983, the official policy or custom must cause the constitutional violation. *Id.* at 692.  However, a municipality may not be liable under § 1983 on a *respondeat superior* theory; in other words, a government entity may not be liable under § 1983 simply by employing a tortfeasor. *Id.* at 691.

Here, Plaintiff characterizes his claim against the City of Tyler as one for failure to train its police officers and prosecutors on the basic tenets of criminal prosecution. (Doc. No. 10, at 10.) As discussed above, to succeed on a failure to train theory, "[d]efects in a particular training program must be specifically alleged." *Quinn*, 863 F.3d at 365 (5th Cir. 2017). Courts require "minimal factual allegations" about the training programs at the pleading stage, since "it is exceedingly rare that a plaintiff will have access to (or personal knowledge of) specific details regarding the existence or absence of internal policies or training procedures prior to discovery." *Thomas*, 800 F. Supp. 2d at 842–43. Still, a plaintiff cannot state a failure-to-train claim by making a "conclusory allegation that it is 'apparent from the facts of [the] case' that [ ] training ... was insufficient." *Speck*, 606 F. App'x at 736.

Here, like the allegations against Chief Toler discussed above, Plaintiff's allegations against the City of Tyler are conclusory. Plaintiff alleges:

> [T]he City of Tyler intentionally, knowingly, recklessly, or with deliberate indifference to the rights of the inhabitants of the City of Tyler and to the Plaintiff, failed to instruct, supervise, control, and/or discipline, on a continuing basis, all Defendants in the performance of their duties to refrain from: Conspiring to violate the rights, privileges, and immunities guaranteed to Plaintiff by the Constitution and Laws of the United States and the Laws of the State of Texas, and otherwise depriving citizens and individuals of their constitutional and statutory rights, privileges, and immunities.¶ The City of Tyler had knowledge of, or had it

>  diligently exercised its duties to instruct, train, supervise, control, and discipline on a continuing basis, should have had knowledge that the wrongs that were done, as heretofore alleged, or other unlawful or unconstitutional acts, were going to be committed.

(Doc. No. 1, at ¶¶ 40, 41.)

These allegations make general legal conclusions about the City of Tyler's liability in this matter, but they fail to allege any facts regarding a specific policy or program that resulted in a constitutional violation. Moreover, Plaintiff does not identify any specific defects in any particular training programs. Without any specific factual allegations about deficiencies in the City of Tyler's training programs, Plaintiff's failure to train *Monell* claim cannot proceed as pleaded.

### IV.     Plaintiff's Remaining § 1983 Claims and § 1985 Claims Against Defendants

As discussed, Plaintiff has pleaded claims for First Amendment retaliation, violation of due process under the Fourteenth Amendment, and for conspiracy to interfere with civil rights pursuant to 42 U.S.C. § 1985(3). (Doc. No. 1.) Though Defendants' motion purports to seek dismissal of Plaintiff's entire case, Defendants' motion does not address these claims. The court will not *sua sponte* consider the sufficiency of the allegations with respect to these claims herein.

### V.     Qualified Immunity

Lastly, Defendants contend that the individual officers are entitled to qualified immunity. (Doc. No. 4, at 14–17.) Plaintiff argues that Defendants' blanket assertion of qualified immunity is meritless. (Doc. No. 10, at 10.)

The doctrine of "qualified immunity" protects government officials from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).  At the pleading stage, the qualified immunity inquiry focuses on whether a plaintiff has shown "(1) that the official violated a statutory or constitutional right, and (2) that the right was

13

'clearly established' at the time of the challenged conduct." *Ashcroft v. al–Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow*, 457 U.S. at 818). The court has "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Here, Defendants make only a general assertion that they are entitled to qualified immunity, but they make no specific argument regarding their asserted defense. Defendants fail to identify which Defendant or Defendants they believe are entitled to qualified immunity based upon the alleged conduct or identify which claims they intend to assert the defense against. Indeed, the entirety of Defendants' argument on qualified immunity is as follows:

> Plaintiff has failed to allege any factual basis on which a jury could find that Defendant violated his constitutional rights or that any of Defendant's conduct was objectively unreasonable, and has failed to identify a single existing precedent which demonstrates Defendant's alleged conduct constitutes a constitutional violation, so the Court should dismiss all claims against the individual Defendants based on their qualified immunity.

(Doc. No. 4, at 16–17) (internal quotations omitted).

Defendants' arguments amount to little more than boilerplate language regarding the doctrine of qualified immunity. Such arguments fail to sufficiently raise the defense in a Rule 12(b)(6) motion. *See Watkins v. Healy*, No. 17-CV-13940, 2019 WL 3777631, at *9 (E.D. Mich. Aug. 12, 2019), *aff'd*, 986 F.3d 648 (6th Cir. 2021) (finding that boilerplate law related to the doctrine of qualified immunity in a 12(b)(6) motion failed to provide the court any basis to conclude that defendant was entitled to qualified immunity). Furthermore, as discussed above, Plaintiff's allegations, if taken as true, demonstrate that Officer Thomas violated a clearly established constitutional right of which a reasonable person would have known—Plaintiff's

constitutional right to be free from unlawful seizure.[1] While the claim may ultimately be difficult to prove, Defendants have chosen to rely on a 12(b)(6) motion and have presented no evidence to rebut the allegations. To the extent Defendants believe that they have a basis for qualified immunity, they may raise that argument on summary judgment. However, as presented, Defendants' blanket assertion of qualified immunity is meritless.

## VI.     Amendment

In his response to Defendants' motion to dismiss, Plaintiff requests that he be allowed to amend his complaint as a matter of course if the court finds his allegations insufficient. (Doc. No. 10, at 10.) As Defendants failed to file a reply brief, they do not respond to Plaintiff's request.

Relevant here, under Rule 15(a)(1) a party may amend a pleading "as a matter of course" within 21 days of serving it or, if the pleading requires a responsive pleading, within 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), whichever is earlier. But Plaintiff did not amend his complaint in response to Defendants' motion to dismiss as permitted by Rule 15(a)(1). Instead, he elected to respond to Defendants' motion to dismiss,[2] and the time for filing an amended complaint as a matter of course has passed. Thus, the court will consider his request for leave to amend his complaint under Rule 15(a)(2).

Rule 15(a)(2) permits a party to amend pleadings only with leave of court or a defendant's written consent. Leave should be freely given "when justice so requires." Fed.R.Civ.P. 15(a)(2). Leave to amend, however, is by no means automatic. *Addington v. Farmer's Elevator Mut. Ins. Co.*, 650 F.2d 663, 666 (5th Cir. 1981). "[T]he decision to grant or deny a motion for leave to

---

[1] The court notes that Supreme Court's holding in *Thompson*, confirming that a pretrial detainee may bring Fourth Amendment claim under § 1983 for malicious prosecution was decided on April 4, 2022, and the alleged falsified affidavit in this case was made on April 13, 2022, thereby putting Defendants on notice of the alleged clearly established law at the time of the alleged conduct. *See Thompson*, 142 S. Ct. 1332 (2022).

[2] Plaintiff does not attach a proposed amended complaint to suggest how he would overcome the deficiencies identified herein.

15

amend lies within the sound discretion of the trial court. *Id.* In considering whether to grant a plaintiff's request for leave to amend a complaint, the court may consider factors such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993).

Here, there appears to be no undue delay as Plaintiff requested the opportunity to amend in his response to Defendants' 12(b)(6) motion. Moreover, there is no apparent bad faith or dilatory motive in Plaintiff's request and Defendants have not identified any such motivation. Indeed, Plaintiff's request appears to be motivated by his desire to cure any insufficient allegations, and, with respect to his failure to train claims, it is plausible that the problems identified herein could be cured with additional factual allegations. Thus, the court recommends that Plaintiff be granted to leave to amend.

## CONCLUSION

For these reasons, the court **RECOMMENDS** that Defendants' motion be **DENIED** with respect to Defendants' request to dismiss Plaintiff's Fourth Amendment claims as to Defendant Officer Thomas. The court **RECOMMENDS** that the motion be **GRANTED** as to any Fourth Amendment claims asserted against Defendant Officer Utley, Defendant Officer Sipes, and Defendant Officer Black and that those claims be dismissed with prejudice. The court **RECOMMENDS** that Defendants' motion be **GRANTED** with respect to Plaintiff's failure to train claims against Defendant Chief Toler and the City of Tyler. The court **FURTHER RECOMMENDS**, however, that Plaintiff be granted leave to amend his failure to train claims.

Finally, the court notes that discovery in this action was stayed pursuant to *Carswell v. Camp*, 54 F.4th 307 (5th Cir. 2022). (Doc. No. 14.) However, as discussed herein, Defendants'

assertion of qualified immunity, as presented, is meritless. Moreover, as Defendants have failed to file a 12(b)(6) motion that addresses all of Plaintiff's asserted claims, there is no basis to stay discovery as to the claims not addressed in Defendants' motion. Thus, the court **RECOMMENDS** that the stay of discovery be lifted in this case.

Within fourteen days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report. A party's failure to file written objections to the findings, conclusions, and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United States Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

**So ORDERED and SIGNED this 12th day of September, 2023.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE